```
                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF KANSAS


TERRI PARK,                      )
                                 )
               Plaintiff,        )
                                 )
vs.                              )     Case No. 07-1382-MLB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
               Defendant.        )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On July 13, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 14-23).  Plaintiff alleged disability beginning September 1, 2002 (R. at 14).  Plaintiff is insured for disability insurance benefits through March 31, 2008 (R. at 16).  At step one, the ALJ found that plaintiff did not

4

engage in substantial gainful activity since September 1, 2002, the alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: osteochondrosis, attention deficit, bipolar disorder and borderline personality disorder (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff was able to perform past relevant work as a cleaner/housekeeper and mail clerk (R. at 23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in his analysis of the opinions of treating sources?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the

5

Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300–1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record,

although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

In this case, there is opinion evidence from Dr. Rose and Physician Assistant (P.A.) Bell (regarding physical limitations), and from Dr. Williams (regarding mental limitations).  The court will first address the physical limitations set forth by Dr. Rose and P.A. Williams.

The ALJ stated that the disability assessment filled out by P.A. Bell is not supported by the medical evidence and cannot be given controlling weight.  In addition, the ALJ found that P.A.

7

Bell is not an acceptable treating source.  The ALJ found that the treatment notes indicate minimal to moderate physical impairments consistent with a range of light work with only mild to moderate mental impairments (R. at 22).  The ALJ had previously stated that despite rather benign medical findings, P.A. Bell had filed out an assessment indicating significant limitations, and that the assessment was completed at the request of counsel (R. at 19).

There are numerous errors by the ALJ in his analysis of the assessment filled out by P. A. Bell and Dr. Rose.  First, the assessment was signed not only by P.A. Bell, but also by Dr. Rose (R. at 365-368).  The fact that it was signed by Dr. Rose is not mentioned by the ALJ.[1]  The ALJ therefore erred by failing to acknowledge that an acceptable medical source signed the form.  Furthermore, although P.A. Bell is not an acceptable medical source, he is an "other source."  Evidence from "other sources," including physician assistants, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Opinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the

---

[1] Defendant acknowledges in his brief that "it appears that Dr. Rose signed off on [the assessment] as well" (Doc. 13 at 9).

file. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. SSR 06-03p, 2006 WL 2329939 at **2,3,5. Thus, the ALJ not only erred by failing to acknowledge that the assessment was signed by Dr. Rose and P. A. Bell, the ALJ also erred by discounting the opinion of P.A. Bell solely because he is not an acceptable medical source, without weighing the factors for addressing opinions from other medical sources as required by SSR 06-03p.

Second, plaintiff argues that the ALJ improperly relied upon his own lay assessment of the medical data in determining that the treating source opinion is not consistent with the medical evidence in the record, including the ALJ's conclusion that the medical evidence consists of rather benign findings (Doc. 8 at 4). The ALJ found that the opinions of P.A. Bell (and Dr. Rose) were not supported by the medical evidence, and were contrary to "rather benign" medical test findings (R. at 22, 19). The ALJ indicated that his RFC findings were in agreement with the state agency physical assessment, and that the evidence received into the record after this assessment did not provide any new or material information that would significantly alter any finding about plaintiff's RFC (R. at 22-23). The state agency assessment

was prepared on October 15, 2003 (R. at 259).  Subsequently, the medical records indicate that an MRI of plaintiff's lumbar spine and cervical spine was performed on October 18, 2005 (R. at 391-392) and September 25, 2006 (R. at 378-379).  Dr. Rose and P.A. Bell indicated on May 21, 2007 that the limitations they set forth for the plaintiff were based on physical exams and the MRI findings (R. at 365-368).  The ALJ acknowledged the MRIs and other medical testing, but then stated that despite the rather benign findings in the MRIs and other tests, P.A. Bell (and Dr. Rose) completed an assessment indicating that plaintiff had significant limitations (R. at 19).

No medical opinion appears in the record indicating that the MRI tests were "rather benign," and there is no medical opinion in the record that indicates that the opinions expressed by Dr. Rose and P.A. Bell are inconsistent with the MRI test results. The 2003 state agency assessment, which the ALJ relied on in making his RFC findings, could not have taken into account MRI tests taken in 2005 and 2006.  An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to

render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any medical evidence indicating that the MRI tests are rather benign and inconsistent with the opinions of Dr. Rose and P.A. Bell, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Defendant also noted in his brief that the ALJ discounted the opinions of Dr. Rose and P.A. Bell because the medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain such as muscle atrophy, muscle spasms, neurological deficits, positive straight leg-raising, inflammatory signs, or bowel or bladder dysfunction. The ALJ also noted that the patient has not had surgery or inpatient hospitalization, has not been referred for physical therapy, pain clinic, or pain specialist for treatment, and the patient has not taken any strong doses of any medication (Doc. 13 at 9-10, R. at 21-22). However, such broad assertions, in the absence of any medical evidence to support these assertions, is an improper justification for disregarding an opinion of a treating source. An ALJ is not a medical expert on identifying the clinical signs typically associated with chronic musculoskeletal pain, and the ALJ is not *sua sponte*, entitled to render a medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for

11

this determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. <u>Bolan</u>, 212 F. Supp.2d at 1262. Likewise, in the absence of medical evidence of the relevance or significance, if any, of the absence of certain types of treatment or medications, the ALJ is not in a position to render a medical judgment of the relevance or significance of the absence of such treatments or medications.[2]

Third, the ALJ specifically mentioned that the assessment provided by Dr. Rose and P.A. Bell was completed "at the request of counsel" (R. at 19). However, the fact that the assessment was completed at the request of counsel has no relevance, of itself, to the weight to be assigned to it. An ALJ's belief that the opinion of a treating physician was an act of courtesy to a patient, absent a legal or evidentiary basis for such a finding, is an improper reason to reject the opinion. <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004). Furthermore, an ALJ's conclusory assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his

---

[2] In the case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.

opinion as a treating physician.  McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002).  Therefore, absent an evidentiary basis of the relevance of the fact that the assessment was completed at the request of counsel, this fact should not serve as a basis for giving more or less weight to the opinion. Because of these errors by the ALJ in his analysis of the assessment by Dr. Rose and P.A. Bell, this case shall be remanded in order for the ALJ to properly consider the opinions set out in their physical assessment of the plaintiff.

The ALJ also found that the mental assessment prepared by Dr. Williams was not supported by the medical evidence and could not be given controlling weight (R. at 22).  Again, the ALJ was in agreement with the state agency mental RFC assessment (R. at 22-23).  The assessment by Dr. Williams provides no explanation for his findings that plaintiff has "no useful ability to function" in numerous categories (R. at 407-410, 423-427).  A treating physician's report may be rejected if it is brief, conclusory, and unsupported by medical evidence as long as the ALJ sets forth specific, legitimate reasons for such rejection. Griner v. Astrue, 2008 WL 2372481 at *1 (10th Cir. June 12, 2008); Williamson v. Barnhart, 350 F.3d 1097, 1099 (10th Cir. 2003).  By contrast, the ALJ relied on the state agency mental RFC assessment, which provided a detailed narrative discussion of the evidence and the basis for the more limited mental

limitations adopted by the ALJ (R. at 326, 339).

Furthermore, the ALJ noted that plaintiff was given a GAF score of 60 by Dr. Williams, Dr. Mintz, and by Teri Sutherlin, a licensed clinical psychotherapist (R. at 407, 213, 230). On October 15, 2004, plaintiff's treatment plan review indicates a GAF of 70 (R. at 181).[3] The ALJ found that these GAF scores, showing mild and moderate symptoms, were inconsistent with the findings of Dr. Williams (R. at 22). Furthermore, the state agency mental RFC assessment adopted by the ALJ found that plaintiff was moderately limited in 4 out of 20 categories. The court therefore finds that the ALJ has set forth specific and legitimate reasons for discounting the opinion of Dr. Williams.

Plaintiff raises one further issue regarding the opinion of

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships.**
>
> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

Dr. Williams.  The ALJ noted that Dr. Williams left blank the question of whether plaintiff was a malingerer (R. at 21, 410).  The ALJ indicated that the staff notes of March 16, 2007 indicate that the plaintiff had an "agenda" for benefits (R. at 22).  The staff notes from that date state that plaintiff is wanting documentation that her borderline personality disorder makes it difficult for her to work, and that she has an agenda for presenting at the office, but that the plaintiff was told that she has not allowed enough time for the effectiveness of the medication and she needed to be a little more aware of that (R. at 344-345).  The ALJ also noted that Dr. Mintz, who conducted a mental status examination of the plaintiff in September 2003, had found that plaintiff appeared "disability oriented" (R. at 22, 229).  The ALJ concluded by stating that although Dr. Williams did not answer the question regarding malingering, the treatment notes indicated that this may be an issue (R. at 22).

     Included in the record before the Appeals Council was an identical mental RFC assessment from Dr. Williams with the malingering question answered (that plaintiff was not a malingerer) (R. at 427).  The Appeals Council considered this additional evidence, and found that the weight accorded by the ALJ to the opinion of Dr. Williams was supported by substantial evidence.  The Appeals Council stated that it accepted the assertion that Dr. Williams corrected his prior statement, but

15

noted that Dr. Williams did not redate the assessment nor did he initial his correction. The Appeals Council concluded by stating that this information did not provide a basis for changing the ALJ's decision (R. at 6).

The court offers no opinion on whether this additional information, of itself, would provide a valid basis for remanding the case for further hearing. However, because this case is being remanded for other reasons, plaintiff can submit a revised statement from Dr. Williams which is redated and/or in which the correction is initialed. The ALJ can then consider, what weight, if any, to attach to this additional information in weighing the opinions of Dr. Williams.

**IV.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require

a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  In light of the errors noted above, when this case is remanded, the ALJ shall conduct a new credibility analysis after the ALJ has properly considered the opinions of Dr. Rose and P.A. Bell, and after the ALJ has decided what weight, if any, to accord to the opinion of Dr. Williams

that plaintiff is not malingering.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 21, 2008.

                                      s/John Thomas Reid
                                      JOHN THOMAS REID
                                      United States Magistrate Judge